IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JONATHAN T. DUNCAN,              )
                                 )
                    Plaintiff,   )
                                 )
        v.                       )        1:24-CV-938
                                 )
COUNTY OF SURRY, SHERIFF         )
STEVE C. HIATT, LIEUTENANT       )
RICHARDSON, DEPUTY               )
WHITAKER, DEPUTY JOHN DOE        )
1, JOHN DOE SURETY 1, JOHN       )
DOE SURETY 2,                    )
                                 )
                    Defendants.  )

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

The plaintiff, Jonathan T. Duncan, was standing with a group of people near a

parking lot in Mount Airy where a violent altercation had just occurred.  As part of an

investigation into the altercation, Deputy Sheriff Whitaker approached Mr. Duncan and

asked for his identification.  After Mr. Duncan refused to provide identification, Deputy

Whitaker touched and held his arm, moved him a few feet, and threatened to take him to

jail.  Mr. Duncan brings federal constitutional claims and state law claims against Deputy

Whitaker, as well as *Monell* claims and supervisory claims against the other defendants.

The defendants moved for summary judgment, and they moved to seal a body-cam

video and medical records.  Doc. 37, 39.  While those motions were pending, the

magistrate judge allowed Mr. Duncan to amend his complaint to replace the John Doe

defendants with Deputy Sheriff Justin Jones and Travelers Insurance Company.  Doc. 53

at 3.  The magistrate judge also addressed motions by Mr. Duncan related to discovery and scheduling, *id*. at 1–2, 6–8, and Mr. Duncan has filed further motions, Docs. 50, 56, 66, 72, 74, 75, and a purported third amended complaint.  Doc. 54.  The defendants move to dismiss the action or, in the alternative, to strike the purported third amended complaint.  Doc. 58.

For the reasons that follow, the Court strikes the purported third amended complaint.  As to the claims raised in the original complaint, with limited amendment as allowed by the magistrate judge, there are genuine issues of material fact about whether Deputy Whitaker had reasonable suspicion to seize Mr. Duncan.  His federal constitutional claims may proceed to trial.  The remaining claims against Deputy Whitaker and the other original defendants are legally deficient and subject to dismissal. The defendants' motion for summary judgment, Doc. 37, thus is granted in part and denied in part.

Additional motions and pretrial proceedings are addressed as needed in this Order and by separate orders.

## I.     Procedural History

Mr. Duncan commenced this civil rights action in November 2024, asserting federal claims under 42 U.S.C. §1983 for violation of his First and Fourth Amendment Rights, based upon unlawful seizure and excessive force, as well as state law claims for intentional infliction of emotional distress, assault, battery, and violation of the North Carolina constitution, against Deputy Whitaker.  Doc. 2.  Apart from these claims asserted against Deputy Whitaker, Mr. Duncan also asserted the following claims against

2

the other original defendants, County of Surry, Sheriff Steve C. Hiatt, Lieutenant Richardson, and Deputy John Doe 1:

    a.      First Amendment claim against Lieutenant Richardson and Deputy John Doe 1 (part of "First Claim"), *id*. at 8–9;

    b.      Fourth Amendment claim against Deputy John Doe 1 (part of "Second Claim"), *id*. at 9;

    c.      *Monell* claims against Sheriff Hiatt, the County, and Lieutenant Richardson (Third, Fourth, and Fifth Claims),[1] *id*. at 10–13;

    d.      Intentional infliction of emotional distress against Sheriff Hiatt, the County, and Deputy John Doe 1 (Sixth Claim), *id*. at 13–14;

    e.      Assault and battery against Deputy John Doe 1 and Sheriff Hiatt[2] (Seventh and Eighth Claims), *id*. at 14–15; and

    f.      Violation of the North Carolina Constitution against Sheriff Hiatt, the County, and Deputy John Doe 1 (Ninth Claim), *id*. at 15–16.

The defendants answered the complaint in June 2025, Doc. 9, and the parties agreed upon a case schedule adopted by the Court in July 2025, under which amended pleadings were due by September 15, 2025, discovery was to be completed by November

---

[1] Mr. Duncan includes claims denominated "Third Claim" and "Fourth Claim" out of order in his complaint. Doc. 2 at 10–11. Mr. Duncan includes Lieutenant Richardson as a defendant only in the caption of his Third Claim. *Id*. at 11.

[2] Although Mr. Duncan does not list Sheriff Hiatt in the heading of these claims, he states that Sheriff Hiatt "is liable to Plaintiff for the acts of his public employees, the individual Defendants herein" within his claims for assault and battery, Doc. 2 at 14–15, and he reiterates these claims in response to defendants' summary judgment motion. *See* Doc. 48 at 3.

10, 2025, and dispositive motions were due December 10, 2025.  Docs 15, 16.[3]  The Court extended the deadline to amend pleadings to October 3, 2025.  09/09/2025 Text Order.

The parties filed a consent motion for protective order in October 2025.  Doc. 24. In that same month, Mr. Duncan filed motions to compel discovery, to extend discovery limits and deadlines, and to amend his complaint.  Docs. 25, 26, 27, 32.  The protective order was filed on April 2, 2026.  Doc. 51.  In an order entered April 3, 2026, the magistrate judge denied the discovery-related motions and allowed in part the motion to amend limited to replacing the John Doe defendants with Deputy Jones and Travelers, and adding specified additional factual allegations.  Doc. 53 at 3.  The magistrate judge directed Mr. Duncan to file an amended complaint conforming to the order.  *Id.*

In the meantime, on December 10, 2025, defendants filed the present motion for summary judgment along with a motion to seal the attached medical records of Mr. Duncan and body-cam video footage of the incident in question.  Docs. 37, 39.  The defendants manually filed the body-cam video the next day.  Doc. 42.

Mr. Duncan filed two responses to the summary judgment motion, Docs. 45, 48, as well as motions to oppose sealing of the body-cam video, to "reconsider the Court's discovery order," for appointment of counsel, and for issuance of subpoena.  Docs. 50, 56, 66, 72.  The Court construes the motion to reconsider the discovery order as an

---

[3] Although the docket text for the order entered July 22, 2025, states that dispositive motions are due December 22, 2025, the order itself does not explicitly so provide.  Doc. 16.  Consistent with the Local Rules, LR 56.1(b), the joint report adopted by the Court states that dispositive motions are due 30 days after the close of discovery.  Doc. 15 at 2.

4

objection to the magistrate judge's order denying Mr. Duncan's discovery-related motions. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); LR 72.4.

In addition, Mr. Duncan filed a purported "third amended complaint" on April 13, 2026. Doc. 54 at 1. The defendants then filed their motion to dismiss the action or, in the alternative, to strike the third amended complaint. Doc. 58.

The United States Marshal Service filed a return of service as to the Deputy Jones on June 16, 2026. Doc. 73. Mr. Duncan filed a motion to extend the time for service on Travelers on June 29, 2026. Doc. 74. He filed a motion to defer or deny summary judgment the same date. Doc. 75. The case is set for bench trial during the October Civil Term. Doc. 62.

## II.      Statement of Facts

The following statement of facts is taken from the evidence viewed in the light most favorable to Mr. Duncan, the non-moving party. For context only, the Court has noted some facts as set forth in evidence submitted by both defendants and Mr. Duncan.

Deputy Whitaker is employed by the Surry County Sheriff as a Deputy Sheriff. Doc. 38-2 at ¶ 3. He was on duty on the evening of October 4, 2024, and through the early morning hours of October 5, 2024. *Id*. at ¶ 4. Shortly past midnight October 5, 2024, "the Mount Airy Police Department requested assistance from the Sheriff's Office . . . to respond to a violent altercation that occurred across the street of SoHo Bar & Grill in a parking lot." *Id*. at ¶¶ 5, 7.

When Deputy Whitaker arrived in Mount Airy, he and another deputy "were approached by an officer from the Mount Airy Police Department who requested that

[they] gather the names of individuals who were standing on the sidewalk in front of the parking lot where the altercation occurred in an attempt to gather details about the altercation." *Id*. at ¶ 6; *see* Video 32:43–33:12, 34:01–34:09.[4] According to Mr. Duncan, at that time he "was standing in a public place, approximately 30 to 40 yards away, observing people being detained and arrested by Mount Airy City Police and Surry County deputies." Doc. 45-3 at ¶ 4.

Deputy Whitaker then approached a group of three people, including Mr. Duncan. Doc. 38-2 at ¶ 7; *see* Video at 34:11–34:16. According to Mr. Duncan, Deputy Whitaker "grabbed Plaintiff, placing his hands behind his back and forcing the plaintiff to move from the sidewalk into a parking lot area by contorting his arms behind his back, causing the plaintiff to suffer injury to his back and shoulder areas." Doc. 45-3 at ¶ 7.

The body-cam footage of the encounter is subject to interpretation. The audio generally shows the following dialogue ensued between Mr. Duncan and Deputy Whitaker over the next minute:

> [Deputy Whitaker] "How y'all doing? . . . Hey man, how's it going?"
> [Mr. Duncan] "I'm good."
> [Deputy Whitaker] "You good?"
> [Mr. Duncan] "Yea."
> [Deputy Whitaker] "You got some ID?"
> [Mr. Duncan] "I don't need to show my ID."
> [Deputy Whitaker] "Yea, you do."
> [Mr. Duncan] "No I don't, no I don't. We not gonna play this game, I don't need to show my ID."
> [Deputy Whitaker] "Well ain't nobody playing games."
> [Mr. Duncan] "Yes you are. Unless you have some real articulate suspicion, leave me alone. . . ."

---

[4] All references to the "Video" and the times indicated are to the time stamp showing on the face of the manually-filed body-cam video. Doc. 42.

[Deputy Whitaker] "I do have some real articulate suspicion."
[Mr. Duncan] "Of me?"
[Deputy Whitaker] "You're under an investigation right now."
[Mr. Duncan] "Hold up, we gon-, okay."
[Deputy Whitaker] "So, lemme see your ID."
[Mr. Duncan] "No . . . I'm not."
[Deputy Whitaker] "So you're not gonna show me your ID, then we're gonna go to Dobson and find out who you are and we'll put you in jail until you tell us your name, so how's that?"
. . . . [dialogue continues] . . . .
[Mr. Duncan] "This ain't, this ain't no Nazi Germany."
[Deputy Whitaker] "No, I, ain't; nobody said nothing about this being Nazi Germany."
[Mr. Duncan] "If you wanna take me to jail for something let's go."
[Deputy Whitaker] "Okay, come on . . . . Lemme have your phone."
[Mr. Duncan] "No you ain't getting my phone."
[Deputy Whitaker] "Well I'm putting your phone up.  Put your hands together like you're praying."

Video at 34:16–35:25.[5]

Deputy Whitaker and Mr. Duncan then continue discussion about the placement of Mr. Duncan's hands.  *Id*. at 35:25–35:33.  The body-cam video then shows Deputy Whitaker placing his hand around Mr. Duncan's left wrist area and moving it towards the center of Mr. Duncan's back.  *Id*. at 35:34.  Mr. Duncan says Deputy Whitaker "grabbed" him and "contort[ed] his arms behind his back" and causing injury, Doc. 45-3 at ¶ 7, while Deputy Whitaker says he did this "gently."  Doc. 38-2 at ¶ 9.  Deputy Whitaker then moves his left hand to Mr. Duncan's right arm, and he directs Mr. Duncan to walk "over here" to another part of the sidewalk and parking lot.  Video at 35:37.  Mr. Duncan and Deputy Whitaker continue their dialogue, including Mr. Duncan stating at one point

---

[5] The audio is reasonably easy to hear and understand.  The Court has presented the transcription here for ease of understanding the evidence.

7

"you assaulting me right now." *Id*. at 35:43. Deputy Whitaker further directs Mr. Duncan, "I'm telling you to walk right over here to my car, okay." *Id*. Mr. Duncan and Deputy Whitaker move together towards a parking lot. *Id*. at 35:45–36:03. During the entirety of this time, Mr. Duncan has a cigarette and is able to smoke it. *Id*. at 35:25–37:09.

Another individual approaches to say "I don't know the situation, but I can say that he has been inside here the whole time." *Id*. at 35:51. Ultimately, after further dialogue between the two, Deputy Whitaker states "that's all you gotta tell me," and another officer states "he's not involved." *Id*. at 35:54–37:09. The officers then walk away from Mr. Duncan, talking further between themselves. *Id*. at 37:29–38:13. During the entirety of the encounter between Mr. Duncan and Deputy Whitaker, Mr. Duncan had a cigarette in either his left hand, his right hand, or his mouth. *Id*. at 34:19–37:29.

A few days later on October 8, 2024, Mr. Duncan saw his physician with a chief complaint of "neck/L shoulder pain," stating his "Pain began Saturday night." Doc. 43 at 1–2. The medical records from that visit state that Mr. Duncan reported "that on Saturday night he was questioned by police who states put him 'ina hold' with his hands behind his back and he developed pain in his neck and left shoulder." *Id*. at 1. He was examined and diagnosed with "Strain of muscle and tendon on back wall of thorax." *Id*. at 3.

In the meantime, Mr. Duncan complained to Lieutenant Richardson, by telephone, on October 7, 2024, about the incident. Doc 38-3 at ¶ 5. Lieutenant Richardson reviewed the body-cam footage and informed Mr. Duncan on October 11, 2024, that his complaint was unfounded. *Id*. at ¶¶ 7–8.

### III. Discovery-Related Motions

In Mr. Duncan's objection to the magistrate judge's discovery ruling, he contends generally that the defendants have not been sufficiently responsive to his discovery requests and that he was not able to review the video from Deputy Whitaker's body-worn camera before responding to defendants' summary judgment motion. Doc. 56 at 1–5. In his summary judgment response, which the Court construes as including an additional discovery-related motion, Mr. Duncan also maintains that he should be given opportunity for further discovery and to supplement his responses. Doc. 48 at 1–2. He suggests that he wants additional discovery into the authenticity of the Whitaker body-cam video. Doc. 70 at 1–2. In his most recent discovery-related motion, Mr. Duncan asks to defer or deny summary judgment pending discovery involving Deputy Jones. Doc. 75 at 1–2.

Mr. Duncan has not shown good cause for the relief sought in his objection and discovery-related motions. Rule 56(d) permits a court to defer or deny a motion for summary judgment to allow additional discovery if the nonmovant declares "it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The rule applies "when the nonmovant has not had the opportunity to discover information that is essential to his opposition." *Hodgin v. UTC Fire & Sec. Americas Corp.,* 885 F.3d 243, 250 (4th Cir. 2018) (cleaned up).

Here, Mr. Duncan has not shown a specific need for further discovery in order to respond to defendants' summary judgment motion. As set forth, *infra*, Mr. Duncan has demonstrated a genuine issue of material fact on federal constitutional claims, and he has not shown that further discovery will have any bearing on the remaining claims that are

subject of the motion.[6]  After the summary judgment motion was filed, he was able to view video from another officer's body worn camera in January 2026 at the police station, Doc. 45-1 at ¶¶ 2–3, and he provided evidence about its contents in his response to the summary judgment motion.  *Id.*  Once the protective order was entered, the defendants provided the video to Mr. Duncan.  Doc. 65 at 2.[7]

Nor has he shown that he needs additional discovery into the authenticity of the body-cam video.[8]  Mr. Duncan has not claimed that the video is inaccurate or has been altered, and nothing in the video so suggests.  If the video provided incontrovertible evidence defeating Mr. Duncan's claims, then it would likely be appropriate to authorize a supplemental brief, but as set forth, *infra*, the body-cam video supports Mr. Duncan's version to a significant degree so supplemental briefing is unnecessary.

Mr. Duncan's discovery-related motions are denied.

## IV.  Amendment to Complaint

The magistrate judge allowed Mr. Duncan to amend his complaint in part, based on his motion to amend filed October 2, 2025, in the following limited respects:  "[T]he

---

[6] The Court will address the need for further discovery related to Deputy Jones, if any, upon framing of the pleadings involving Deputy Jones.  Mr. Duncan's discovery motion related to Deputy Jones thus is denied without prejudice.  *See* Doc. 75.

[7] The delay in entering the protective order apparently occasioned the delay in the production of the video to Mr. Duncan, *see* Doc. 56 at ¶ 5, as North Carolina law requires a court order to release such videos.  N.C. Gen. Stat. § 132-1.4A(g).  The Court regrets the delay, which was not Mr. Duncan's fault.

[8] "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a); *see Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993).

motion is granted as to naming the identities of Deputy John Doe 1, John Doe Surety 1, and John Doe Surety 2 and amending the allegations that refer to those John Does accordingly. The motion is also granted as to the allegations in the proposed Amended Complaint paragraphs 17 through 34. The motion is otherwise denied." Doc. 53 at 3; *see* Doc. 27-1 at 7–10 (relevant paragraphs of proposed amended complaint). The magistrate judge was clear that "[o]therwise, he may not amend the Complaint." Doc. 53 at 5. She directed Mr. Duncan to file an amended complaint "that reflects the very limited amendments noted" in the order. *Id.*

Contrary to that order, Mr. Duncan filed a purported "third amended complaint" that exceeds in part the scope of the allowed amendments. Doc. 54 at 1. He does identify and name the former John Doe defendants as Deputy Jones and Travelers, *id.*, but then he includes additional factual allegations and claims not permitted by the magistrate judge, including claims for false imprisonment, failure to intervene, and vicarious liability under North Carolina law, as well as re-framed § 1983 claims. *Id.* at 7–18. The defendants move to dismiss the case pursuant to Rule 41(b) for violation of a court order or, in the alternative, to strike Mr. Duncan's purported third amended complaint. Doc. 58.

Under the circumstances of this case, dismissal of the action for violation of a court order is not warranted, because Mr. Duncan has, for the most part, complied with the rules and orders of the Court. Mr. Duncan's filing beyond the scope of the magistrate judge's order in this one instance does not merit dismissal of the case as a whole. Rather, striking the purported third amended complaint is the appropriate remedy.

The defendants cite to *S.F. ex rel. J.F. v. Cabarrus County Board of Education*, No. 12-CV-560, 2013 WL 4552639 (M.D.N.C. Aug. 28, 2013), in favor of dismissal of the action under Rule 41(b). *See* Doc. 59 at 8. But *S.F.* in fact supports the Court's approach here rather than dismissal of the action as a whole, under Rule 41(b). There, the court dismissed an improperly filed amended complaint under Rule 41(b) and then held, "[i]n doing so, the Court will proceed on the original Complaint." *S.F.*, 2013 WL 4552639, at *4.

Defendants' motion in its alternative part is granted. The Court strikes the third amended complaint and will consider the original complaint the operative complaint, adding to it only those limited amendments allowed in the magistrate judge's order entered April 3, 2026. *See* Doc. 53 at 3; Doc. 27-1 at 5–10. The Court deems those new allegations denied by the original defendants without need for filing another answer.

## V. Summary Judgment Standard

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In analyzing a summary judgment motion, courts "must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Bandy v. City of Salem*, 59 F.4th 705, 709 (4th Cir. 2023). The moving party has the initial burden of demonstrating the absence of any material issue of fact; once the moving party meets its initial burden, the nonmoving

party must come forward with evidentiary material demonstrating the existence of a genuine issue of material fact requiring a trial. *Id.* at 709–10; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### VI. Claims Against Deputy Whitaker

#### A. Unlawful Seizure

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "That means that an officer must generally obtain a warrant, supported by probable cause, to search or seize someone's person." *United States v. Nkongho*, 107 F.4th 373, 380 (4th Cir. 2024). As an exception to this rule, "a police officer can, consistent with the Fourth Amendment, conduct a brief, investigative stop (i.e., a *Terry* stop) predicated on reasonable, articulable suspicion that criminal activity may be afoot." *Milla v. Brown*, 109 F.4th 222, 228 (4th Cir. 2024) (cleaned up) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

#### 1. Evidence of a Seizure

"In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment." *Hiibel v. Sixth Jud. Dist. Ct. of Nev., Humboldt Cnty.,* 542 U.S. 177, 185 (2004). "An initially consensual encounter between a police officer and a citizen can be transformed into a seizure or detention within the meaning of the Fourth Amendment, if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) (cleaned up). "When [an] officer, by means of

13

physical force or show of authority, has in some way restrained the liberty of a citizen . . .

[a court] may conclude that a 'seizure' has occurred." *Terry*, 392 U.S. at 19 n.16.

Here, it is undisputed that Deputy Whitaker did more than just "approach [the group] and ask for their names," as defendants appear to contend. Doc. 38 at 9. Mr. Duncan testifies and the video shows that when Mr. Duncan declined to provide his name, Deputy Whitaker then threatened to take him to jail, i.e., to Dobson, the county seat of Surry County, directed Mr. Duncan to place his hands behind his back, used his hands to place Mr. Duncan's arms behind his back, and moved him to an adjacent parking lot. Doc. 45-3 at ¶ 7; Video at 35:34–35:48. A factfinder could easily conclude that this physical contact and movement constituted a seizure, however briefly, for Fourth Amendment purposes. *See Torres v. Madrid*, 592 U.S. 306, 317 (2021) ("A *mere touch* can be enough for a seizure.") (emphasis added); *California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("The word 'seizure' readily bears the meaning of a laying on of hands . . . to restrain movement."); *United States v. Gray,* 883 F.2d 320, 322 (4th Cir. 1989) ("Any restraint of movement will do." (cleaned up)).[9]

### 2. Reasonable Suspicion

"Reasonable suspicion to initiate a *Terry* stop requires a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Milla*, 109 F.4th at 228 (cleaned up). "Courts measure reasonable suspicion based on the

---

[9] The defendants do not dispute that a "stop" and a "touch[]" by Deputy Whitaker took place. Doc. 38 at 7, 10. But, inexplicably, the defendants contend that Mr. Duncan "*was not*" subject to a seizure. Doc. 47 at 4 (emphasis added).

14

totality of the circumstances." *Id.* "Reasonable suspicion requires more than a mere hunch, but it is less demanding than probable cause and may well fall considerably short of satisfying a preponderance of the evidence standard." *Id.* (cleaned up). But a "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21.

Here, there is a genuine issue of material fact about whether there was a particularized and objective basis for suspecting Mr. Duncan of criminal activity. Indeed, the defendants have not presented any evidence that Deputy Whitaker, at the time he laid hands on Mr. Duncan, had any reason to believe that Mr. Duncan had engaged in any conduct indicative of criminal activity.

The defendants point to two circumstances that they contend support a reasonable suspicion of criminal activity. They state that Mr. Duncan [1] "was present where a crime just occurred and [2] exhibited evasive behavior." Doc. 47 at 5. [10] "This constitutes," they contend, "an objective basis to suspect criminal activity, therefore justifying an intrusion" amounting to a *Terry* stop of Mr. Duncan. *Id.*

Both such circumstances, however, have been rejected by the Fourth Circuit as grounds for a *Terry* stop. In particular, "mere proximity to a suspected crime falls far

[10] The docket entry for the defendants' reply brief includes the notation "filed in error" and "will be refiled by correct attorney." Doc. 47. There is no additional filing of defendants' reply brief on the docket. In any event, the Court has reviewed defendants' reply brief shown as unfiled, and the Court addresses the contentions made therein.

15

short of supplying the officers with reasonable suspicion." *Milla,* 109 F.4th at 230 (cleaned up); *see United States v. Drakeford*, 992 F.3d 255, 262–63 (4th Cir. 2021) ("The level of suspicion must be a particularized and objective basis for suspecting *the particular person* stopped of criminal activity." (cleaned up) (emphasis added)). Likewise, "refusal to engage with police is not, by itself, a valid basis for reasonable suspicion." *Milla,* 109 F.4th at 230; *see United States v. Massenburg*, 654 F.3d 480, 485 (4th Cir. 2011) ("[O]rdinarily the person addressed has an equal right to ignore his interrogator and walk away."). The defendants point to no other circumstances or factors sufficient to support a reasonable suspicion of criminal activity by Mr. Duncan.

The defendants suggest that specific circumstances as they describe in their brief are extreme or different enough to support a reasonable suspicion. They state, for example, Mr. Duncan "was standing directly in front of an area where a large and violent altercation just occurred" and that Mr. Duncan "repeatedly refused to cooperate" with Deputy Whitaker. Doc. 47 at 5. But, in several respects, the defendants overstate the record and draw inferences from the evidence in their favor, rather than in the light most favorable to Mr. Duncan.

For example, the evidence the defendants cite, Deputy Whitaker's declaration, does not support their characterization of the scene. There is no reference in his declaration to a "large" altercation, only one that was "violent," Doc. 38-2 at ¶ 5, and he does not say that he was "directly" in front of the area where it happened. Doc. 47 at 5; *see* Doc. 38-2 at ¶¶ 5–7. Further, the use of the phrase "an area" is ambiguous, Doc. 47 at

16

5, and could mean another sidewalk, a nearby roadway, or a few spaces in a parking lot. And Mr. Duncan testifies he was standing 30 or 40 yards "away."  Doc. 45-3 at ¶ 4.

Likewise, the defendants' characterization of Mr. Duncan's behavior as "evasive" is not unambiguously supported by the body-cam video.  Doc. 47 at 5.  Mr. Duncan does not try to avoid Deputy Whitaker before the seizure takes place; he calmly responds to Deputy Whitaker by refusing to give his identity and questions whether he must do so. Video at 34:23–35:15.  There is nothing in the record to materially distinguish this from the rules stated in *Milla* under which "[m]ere proximity to a suspected crime" and "refusal to engage with police" do not give rise to reasonable suspicion.  109 F.4th at 230.

### 3.  Qualified Immunity

The defendants maintain that Deputy Whitaker is entitled to qualified immunity. "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  "The official invoking qualified immunity bears the burden to show that the right was not clearly established."  *Bolick v. Anderson*, 169 F.4th 528, 539–40 (4th Cir. 2026).

The defendants contend qualified immunity applies because "there is no clearly established right to ignore lawful requests of law enforcement officers," or "be free from any touching by a law enforcement officer."  Doc. 38 at 15.  But the defendants have made no showing that Deputy Whitaker's demand for identification was a "lawful request,"[11] and it was clearly established at the time of Mr. Duncan's seizure that a

---

[11] In their cursory argument on qualified immunity, Doc. 38 at 15, the defendants cite no authority for the proposition that Deputy Whitaker's demand was "lawful," nor have they

bystander near criminal activity could ignore a police officer's requests for information. As noted in *Milla*, decided eleven weeks before the events at issue here and summarizing existing case law, "refusal to engage with police" does not give rise to reasonable suspicion to support a seizure of a person. 109 F.4th at 230.

Indeed, the right to "refuse to cooperate" or to provide identification where the requirements of a *Terry* stop have not been met was clearly established by Supreme Court law decades ago. In *Florida v. Bostick*, for example, the Supreme Court noted that "[w]e have consistently held that a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." 501 U.S. 429, 437 (1991). And years before that, the Supreme Court held that the Fourth Amendment prohibits "stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity." *Brown v. Texas*, 443 U.S. 47, 52–53 (1979).

The cases since have confirmed that this rule is clearly established. *See, e.g., Wingate v. Fulford*, 987 F.3d 299, 310 n.5 (4th Cir. 2021) (stating that a "failure to disclose . . . identity, in itself," cannot "create[e] reasonable suspicion of criminal activity sufficient to justify a stop"); *see also United States v. Landeros*, 913 F.3d 862, 869 (9th Cir. 2019) ("*Brown* [*v. Texas*] held squarely that law enforcement may not require a

---

identified any state law which requires a person not under reasonable suspicion of another crime to provide identification. *See generally State v. Ellis*, 374 N.C. 340, 343–44, 841 S.E.2d 247, 250 (2020) (noting that "[r]efusing to identify oneself to a police officer during a *valid* stop may constitute a violation of N.C.G.S. § 14-223," discussing whether the brief investigatory stop was valid, and concluding it was not in the absence of reasonable suspicion of another crime) (emphasis in original).

18

person to furnish identification if not reasonably suspected of any criminal conduct."); *Stout v. Harris*, No. 3:21-CV-468, 2024 WL 1156857, at *2 n.5 (E.D. Va. Mar. 18, 2024) ("The Supreme Court has consistently held that law enforcement officers cannot require, by threat of arrest, that an individual identify himself absent reasonable suspicion of wrongdoing." (cleaned up)); *United States v. Mettetal*, No. 3:96-CR-50034, 2001 WL 1013230, at *3 (W.D. Va. Aug. 31, 2001) ("[W]hen officers have no basis for suspecting an individual, they may ask to see identification only if they do not convey the message that compliance is required.").

As further noted in *Milla,* several Fourth Circuit cases established that reasonable suspicion does not arise from circumstances similar to or more egregious than those present here. *See* 109 F.4th at 232 (citing *Massenburg*, 654 F.3d at 486–90; *United States v. Slocumb*, 804 F.3d 677, 681–84 (4th Cir. 2015); *United States v. Black*, 707 F.3d 531, 539 (4th Cir. 2013); *United States v. Sprinkle*, 106 F.3d 613, 617–19 (4th Cir. 1997)); *see also Ybarra v. Illinois*, 444 U.S. 85, 90–91 (1979) (holding search of bystander unlawful where "the agents knew nothing in particular about [the bystander], except that he was present, along with several other customers, in a public tavern at a time when the police had reason to believe that the bartender would have heroin for sale").

Deputy Whitaker has not met his burden to show that he is entitled to qualified immunity on Mr. Duncan's Fourth Amendment claim for unlawful seizure.

### B. Excessive Force

Mr. Duncan's excessive force claim largely rises or falls with his unlawful seizure claim. A factfinder could find that Deputy Whitaker used force when he placed Mr.

19

Duncan's arm behind his back and moved him down the sidewalk, and that his force was excessive because without a reasonable suspicion of criminal conduct it was not objectively reasonable. *See Bailey v. Kennedy*, 349 F.3d 731, 743 (4th Cir. 2003) ("In recent years, we have twice confronted situations in which a plaintiff, subjected to police force, had committed no crime; in each, we held that the plaintiff had stated a claim for violation of his constitutional right to be free from excessive police force." (cleaned up)).

"[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "The test of reasonableness under the Fourth Amendment requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (cleaned up).

Here, the defendants have presented no evidence that Mr. Duncan posed a threat to safety to the officer or others or that he was "actively resisting arrest or attempting to evade arrest by flight." *Id.* Further, Mr. Duncan has presented evidence of injury resulting from the manner in which Deputy Whitaker "contort[ed]" his arms. *See Jones v. Buchanan,* 325 F.3d 520, 527 (4th Cir. 2003) ("The extent of the plaintiff's injury is also a relevant consideration.").

Because there is a genuine issue of material fact about whether Mr. Duncan was wrongfully seized and because there is evidence that Deputy Whitaker used some

20

physical force in accomplishing the seizure, then there is also a genuine issue of material fact about whether the force applied to him was excessive.

Defendants suggest that Deputy Whitaker is entitled to qualified immunity on the excessive force claim because "there is no clearly established right to . . . be free from any touching by a law enforcement officer." Doc. 38 at 15. This suggestion, however, does not accurately portray the facts viewed in the light most favorable to Mr. Duncan. The question here is not whether Mr. Duncan had a right to be free from "any touching," but rather whether he had a right to be free from the touching Deputy Whitaker applied here to effectuate a stop in the absence of any reasonable suspicion. *See supra* at 14–19; *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) ("Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant, and defining the clearly established right at issue on the basis of the specific context of the case." (cleaned up)). The defendants have not otherwise developed their cursory qualified immunity argument, and the Court is not obligated to do that for them. *See Hayes v. Self-Help Credit Union*, No. 1:13-CV-880, 2014 WL 4198412, at *2 (M.D.N.C. Aug. 22, 2014) ("It is not the role or the responsibility of the Court to undertake the legal research needed to support or rebut a perfunctory argument.").

Based upon the limited argument advanced by the defendants, qualified immunity on Mr. Duncan's excessive force claim is not warranted.

### C. First Amendment

"A claim for First Amendment retaliation has three elements: (1) the plaintiff must demonstrate that his speech is protected; (2) the defendant took an action that adversely

21

affected that protected activity; and (3) there was a causal relationship between the protected speech and the adverse action." *Nazario v. Gutierrez*, 103 F.4th 213, 236 (4th Cir. 2024) (cleaned up).  On the first element, "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *Id*. at 237 (cleaned up).  For the second element, "the threat of an arrest is likely to deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* (cleaned up).

For causation, "the existence (or absence) of probable cause speaks to the causal connection between the retaliatory animus and the subsequent injury, regardless of whether the subsequent injury is an actual arrest, or silence in the face of a threat of arrest." *Id.* at 237 n.12 (cleaned up).  The Fourth Circuit has held, for example, that "the temporal proximity of [a plaintiff's] peaceful protest and his arrest, unsupported by probable cause, shows [officers] engaged in impermissible retaliation." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013).

Mr. Duncan has produced evidence that shortly after he began saying in front of others that he did not have to provide identification and compared Deputy Whitaker's demands and threats of jail to Nazi Germany, Deputy Whitaker took his arm and moved it behind his back, threatened him with handcuffs and jail, and moved him down the sidewalk.  A factfinder could infer from these circumstances that Deputy Whitaker took these actions in an effort to silence Mr. Duncan and impede his protected speech.

The defendants contend Mr. Duncan's claim fails as a matter of law because he was not arrested.  Doc. 38 at 11–12; Doc. 47 at 8.  But a First Amendment retaliation claim does not depend upon a completed arrest.  Rather, it may be based on the mere

22

"threat of an arrest." *Nazario*, 103 F.4th at 237; *see Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005).

The defendants also contend that Mr. Duncan's speech was not protected under the First Amendment and that there is no evidence of a causal relationship between his speech and Deputy Whitaker's actions. Doc. 38 at 12–13; Doc. 47 at 8–9. But, viewed in the light most favorable to Mr. Duncan, his statements to Deputy Whitaker before being seized can be construed as "verbal criticism and challenge directed at [a] police officer[.]" *Nazario*, 103 F.4th at 237; *see, e.g., Tobey*, 706 F.3d at 384 (holding the plaintiff stated a First Amendment claim where, shortly before arrest, he "express[ed] his view that TSA's enhanced screening procedures were unconstitutional," and displayed the text of the Fourth Amendment on his chest).

The absence of reasonable suspicion or probable cause also provides a strong inference of retaliation. Indeed, the Supreme Court has observed that "its absence will— as in retaliatory prosecution cases—generally provide *weighty evidence* that the officer's animus caused the arrest." *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019) (emphasis added). The immediate temporal proximity between Mr. Duncan's statements and his seizure also gives rise to a genuine issue of fact as to causation. *See Tobey*, 706 F.3d at 387 ("[T]he temporal proximity of his peaceful protest and his arrest, unsupported by probable cause, shows Appellants engaged in impermissible retaliation.").

The Court recognizes that defendants assert generally that Deputy Whitaker is entitled to qualified immunity. Doc. 38 at 15; Doc. 47 at 9–10. But, the defendants do not even reference the First Amendment claim, or its elements, in their qualified

23

immunity discussion.  *See* Doc. 38 at 15; Doc. 47 at 9–10.  In addition, Mr. Duncan relies on two on-point cases in his response to summary judgment, Doc. 45 at 9, 12–13 (citing *Tobey*, 706 F.3d at 387 and *Nieves*, 587 U.S. at 402), which the defendants do not mention in either of their briefs.  Docs. 38, 47.  In light of this absence of argument in support of qualified immunity on Mr. Duncan's First Amendment claim and the cases cited herein, Deputy Whitaker has not met his burden of proof to show that he is entitled to qualified immunity.

The defendants' motion for summary judgment on the First Amendment claim will be denied.[12]

### D.  State Law Claims

### 1.  Intentional Infliction of Emotional Distress

"The essential elements of an action for intentional infliction of emotional distress are 1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress."  *Waddle v. Sparks,* 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (cleaned up).  "Extreme and outrageous conduct is defined as an action that exceeds all bounds usually tolerated by a decent society."  *Starnes v. Gen. Elec. Co.*, 201 F. Supp. 2d 549, 563 (M.D.N.C. 2002) (cleaned up).  "The term 'severe

---

[12] In what appears to be an unauthorized sur-reply brief following the defendants' reply brief that was "filed in error," *see supra* n.10, Mr. Duncan suggests alternative grounds for his First Amendment claim, based on statements he made prior to the encounter with Deputy Whitaker, which are not in the record and not depicted on the body-cam video.  *See* Doc. 48 at 13.  Mr. Duncan introduces no evidence that Deputy Whitaker heard or was aware of any statements made by Mr. Duncan prior to their encounter depicted on the video.  To the extent Mr. Duncan asserts a separate claim on these grounds, that claim is without evidentiary support.

24

emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Waddle,* 331 N.C. at 83 (cleaned up).

Mr. Duncan has not presented evidence that creates a genuine issue of material fact as to the first or third elements of the claim. Deputy Whitaker's conduct does not rise to the level of "extreme and outrageous conduct," *id.* at 82, but rather demonstrates, at most, a brief detention in violation of the Fourth Amendment. In addition, Mr. Duncan has not provided evidence of "severe emotional distress," *id.* at 83, because he has no proof of a "severe and disabling" mental condition" "recognized and diagnosed by professionals." *Id*. (cleaned up). This claim will be dismissed.

### 2. Assault and Battery

"An assault is an offer to show violence to another without striking him, and a battery is the carrying of the threat into effect by the infliction of a blow." *Dickens v. Puryear,* 302 N.C. 437, 444, 276 S.E.2d 325, 330 (1981). "Battery is an assault whereby any force, however slight, is actually applied to the person of another directly or indirectly." *I.P. by Newsome v. Pierce,* No. 5:19-CV-228, 2020 WL 1976818, at *8 (E.D.N.C. Apr. 24, 2020) (cleaned up). "The least touching of another's person can satisfy the common law definition of force to commit battery." *Torres*, 592 U.S. at 314 (cleaned up).

Deputy Whitaker's seizure of Mr. Duncan without his consent and without reasonable suspicion may create a genuine issue of material fact on these minimal

25

elements of a civil assault and battery.  But, Deputy Whitaker is entitled to summary judgment on the basis of public official immunity.  Such immunity "shields public officials from personal liability for claims arising from discretionary acts or acts constituting mere negligence, by virtue of their office, and within the scope of their governmental duties." *Bartley v. City of High Point*, 381 N.C. 287, 294, 873 S.E.2d 525, 533 (2022).  "An individual will not enjoy the immunity's protections if his action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt." *Id*. (cleaned up).  "Absent evidence to the contrary, it will always be presumed that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law." *Id*. at 295 (cleaned up).

That presumption can be rebutted.  *See id*.  But unlike the federal immunity standard, which is an objective test, the North Carolina standard (at least as to malice and corruption) is an inquiry into the subjective state of mind of the government actor. *Andrews v. Crump*, 144 N.C. App. 68, 76, 547 S.E.2d 117, 123 (2001).  A plaintiff must show, for example, that the defendant acted with the intent to injure another or with reckless indifference to the rights of others.  *Bartley*, 381 N.C. at 295–96.

Here, Mr. Duncan has not shown any reason why this immunity does not apply to Deputy Whitaker, nor has he produced evidence showing that Deputy Whitaker acted outside the scope of his official authority, with malice, or corruptly.  While he contends that the factfinder could infer malice from the facts of the unconstitutional detention, he

26

does not support that contention with case law.[13]  This was a short seizure with a fairly brief touching, and as soon as it became clear that Mr. Duncan was not involved in the altercation under investigation, Deputy Whitaker ended the stop.

In the absence of evidence rebutting the presumption, Deputy Whitaker is entitled to public official immunity on Mr. Duncan's claims of assault and battery.

### 3. State Constitutional Claim

Mr. Duncan may only bring a claim under the state constitution "in the absence of an adequate state remedy." *Corum v. Univ. of N.C. Through Bd. of Governors,* 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992).  Since Mr. Duncan has the ability to assert state common law claims, his state constitutional claim is barred.  *Penley v. McDowell Cnty. Bd. of Educ.,* 876 F.3d 646, 661 (4th Cir. 2017).

## VII.  Claims Against Other Defendants

In his complaint, including to the extent of allowed amendment, Mr. Duncan also asserts claims against the County of Surry, Sheriff Steve C. Hiatt, Lieutenant Richardson, Deputy Jones, and Travelers.[14]  Doc. 2 at 1; Doc. 27-1 at 5–10; Doc. 53 at 3; Doc. 54 at 1.

---

[13] In this section of his brief, Mr. Duncan provides links to some online legal research sites to support his legal argument.  Doc. 45 at 17.  First, some of those links don't work.  Second, inserting such links to secondary sources is an effort to violate the word limits in the Local Rules.  *See* LR 7.3(d)(3).

[14] In the original complaint, Mr. Duncan designated Deputy Jones and Travelers as "John Doe 1" deputy, and two "John Doe" surety defendants.  Doc. 2 at 1.  The magistrate judge allowed Mr. Duncan to amend his complaint to re-designate them.  *See* Doc. 53 at 3; Doc. 54 at 1.  The Court, *supra*, treats the original complaint as the operative complaint, with the limited amendments allowed by the magistrate judge.  *See supra* at 10–12.  The Court thus replaces in the analysis, where applicable, references to John Doe with Deputy Jones and Travelers.

27

In opposition to the defendants' motion for summary judgment, Mr. Duncan concedes that he has dismissed "specific *Monell* claims . . . against defendant Sheriff Steve Hiatt."  Doc. 48 at 2.  Mr. Duncan also concedes that "Defendants Surry County, Sheriff Hiatt in his individual capacity, and Richardson are entitled to summary judgment on Plaintiff's First, Third, Fourth, and Fifth claims for relief."  Doc. 45-3 at ¶ 11 (citing Doc. 2 at ¶¶ 35–39, 47–64, 78–80).  On the basis of that concession, the defendants' motion is granted in part for those claims and defendants:  (1) his First Amendment claim against Lieutenant Richardson (part of "First Claim"), Doc. 2 at 8, and (2) *Monell* claims against Sheriff Hiatt, the County, and Lieutenant Richardson (Third, Fourth, and Fifth Claims), *id.* at 10–13.

Mr. Duncan states that he continues to assert other state claims against Sheriff Hiatt for "Respondeat Superior" and for violation of the North Carolina Constitution. Doc. 48 at 2, Doc. 45-3 at ¶ 11.  Mr. Duncan, however, has not demonstrated a legal or factual basis for a *respondeat superior* recovery against Sheriff Hiatt in the absence of viable claims against his employee, Deputy Whitaker.  *See Van Landingham v. Singer Sewing Mach. Co.*, 207 N.C. 355, 177 S.E. 126, 127 (1934).  The defendants' motion thus is granted in part for those claims.

The defendants' motion for summary judgment was filed on behalf of defendants Surry County, Sheriff Hiatt, Lieutenant Richardson, and Deputy Whitaker.  Doc. 37.  It does not address the claims against defendants Deputy Jones or Travelers, who were only

28

added as defendants after the summary judgment motion was filed. Those claims remain pending.[15]

## VII. Appointment of Counsel

After the close of summary judgment briefing, Mr. Duncan filed his motion for an order appointing counsel to represent him, pursuant to 28 U.S.C. § 1915(e)(1), "in all further proceedings in this action." Doc. 66 at 4.

To the extent that Mr. Duncan seeks appointment of counsel to assist him with adjudication of the defendants' summary judgment motion, Mr. Duncan's motion is denied. Mr. Duncan has demonstrated through his filings that he has been capable of representing himself, and the summary judgment motion is largely resolved in his favor. To the extent he seeks appointment of counsel to assist him with his claims against newly-added defendants Jones and Travelers, the motion is denied. He has not shown that there is anything particularly complicated about the case or that he cannot proceed adequately on his own.

The Court will direct the Clerk to attempt to locate pro bono counsel willing to represent Mr. Duncan at trial pursuant to Standing Order 6.

## VIII. Subpoena

Mr. Duncan moves for authorization to issue a subpoena to compel the testimony of two witnesses at trial: Officer Kandom Wilson and Officer Jerry Hatmaker. Doc. 72

---

[15] The United States Marshals Service return of service was filed as to Deputy Jones June 16, 2026, and an answer by Deputy Jones is due July 7, 2026. Doc. 73. Mr. Duncan states that he has not yet served Travelers, and he seeks an extension of time to do so. Doc. 74. The Court will address that extension motion by separate order.

at 1–2.  Given that additional proceedings may be necessary to address claims against Deputy Jones and Travelers, the Court denies this motion without prejudice.  The motion may be renewed following further proceedings as detailed in the conclusion of this order.

### IX.    Conclusion

The case is set for trial during the October civil term of court.  That might be feasible if the case proceeds only as to Mr. Duncan's claims against Deputy Whitaker.  It is not feasible if Mr. Duncan wants to proceed on his claims against Deputy Jones and Travelers, who have not yet entered appearances in the case.  The Court will therefore remove the case from the October trial calendar and hold rescheduling of the trial open.

It is **ORDERED AND ADJUDGED** that:

1. The plaintiff's motion on filing of body-worn camera footage and notice of opposition to any future motion to seal, Doc. 50, is **DENIED** as moot.

2. The plaintiff's objection to the magistrate judge discovery order, Doc. 56, is **OVERRULED**.

3. The plaintiff's motion to defer or deny summary judgment, Doc. 75, is **DENIED** without prejudice.

4. The defendants' motion to dismiss or, in the alternative, to strike plaintiff's purported third amended complaint, Doc. 58, is **GRANTED** in its alternative part, and the purported third amended complaint, Doc. 54, is **STRICKEN** and replaced with the original complaint, Doc. 2, amended to replace "Deputy John Doe 1" with deputy Justin Jones, and all references to "John Doe Surety 1, and John Doe

30

Surety 2" with Travelers Indemnity Company, and to add the factual allegations from paragraphs 17–34 of the proposed amended complaint, Doc. 27-1 at 7–10.

5. The plaintiff's motion to appoint counsel, Doc. 66, is **DENIED** as it relates to summary judgment proceedings.

6. The plaintiff's motion for issuance of subpoena, Doc. 72, is **DENIED** without prejudice pending further proceedings, ordered below.

7. The defendants' motion for summary judgment, Doc. 37, is **GRANTED IN PART** and **DENIED IN PART** as follows.

    a. The following claims are **DISMISSED**:

        i. First Amendment claim against Lieutenant Richardson (part of First Claim), Doc. 2 at 8;

        ii. *Monell* claims against Sheriff Hiatt, the County, and Lieutenant Richardson (Third, Fourth, and Fifth Claims), *id*. at 10–13;

        iii. State law claims against Deputy Whitaker (part of Sixth, Seventh, Eighth, and Ninth Claims), *id*. at 13–16;

        iv. State law claims for respondeat superior liability against Sheriff Hiatt (part of Sixth Seventh, Eighth, and Ninth Claims). *Id*.

    b. The following claims shall proceed to trial:

        i. The plaintiff's Fourth Amendment claims for unlawful seizure and excessive force against Deputy Whitaker (part of Second Claim), *id*. at 9;

ii. The plaintiff's First Amendment claim for retaliatory seizure and threatening arrest against Deputy Whitaker (part of First Claim), *id.* at 8–9.

c. The Court makes no ruling on the plaintiff's claims against Deputy Jones and Travelers, pending framing of the pleadings as to Deputy Jones, and service, if any, on Travelers. The Court will address Mr. Duncan's motion to extend time for service on Travelers, Doc. 74, by separate order.

8. The defendants' motion to seal, Doc. 39, will be addressed by separate order.

9. The Court directs the Clerk to attempt to locate pro bono counsel willing to represent Mr. Duncan at trial pursuant to Standing Order 6.

10. The case is removed from the October 2026 Civil Trial Calendar and will be rescheduled as appropriate.

This the 2nd day of July, 2026.

_____
UNITED STATES DISTRICT JUDGE

32